**Jose Angel REYNA, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 01–99–00231–CR, 01–99–00232–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 13, 2000.

Brian W. Wice, Houston, for Appellant.

William Delmore, III, John B. Holmes, Houston, for State.

Panel consists of Justices COHEN, TAFT, and SMITH.[1]

## OPINION

MURRY B. COHEN, Justice.

A jury found appellant guilty of murder and of injury to a child, and it assessed his punishment at 30 years in prison for murder and five years for injury to a child. On appeal, appellant contends the trial judge erred at the punishment stage of trial by refusing to instruct the jury on temporary insanity due to intoxication and by allowing the prosecution to question him about his silence while under arrest. We affirm.

On September 9, 1998, appellant shot to death his common-law wife, Ana Rodriguez. One of the shots struck his son.

---

Officers arrested appellant about 2–1/2 hours later. One, Officer Chapa, thought appellant was intoxicated then, but the other officer did not. Appellant testified at the punishment stage about events before and after the shooting. He testified that he could not remember certain incriminating events after the first shot. Shortly after the shooting and before his arrest, appellant called three friends, asked for money, stated he was in trouble, and spoke of fleeing. He told Officer Chapa he resented Rodriguez's coming home at 4 or 5 a.m. every morning and knew she was seeing another man. When the prosecutor asked, "Are you trying to say you were so drunk you didn't know what you were doing?," appellant answered, "No, I wasn't very drunk. I had six or seven beers."

■ In point of error one, appellant contends the trial judge erred by denying a jury instruction on temporary insanity at the punishment stage because the evidence raised that issue. We disagree.

■ Voluntary intoxication is not a defense to crime. TEX. PENAL CODE ANN. § 8.04(a) (Vernon 1994). However, evidence of temporary insanity caused by intoxication may be introduced in mitigation of punishment. TEX. PENAL CODE ANN. § 8.04(b). Insanity means that appellant "did not know that his conduct was wrong." TEX. PENAL CODE ANN. § 8.01(a). "When temporary insanity is relied upon as a defense and the evidence tends to show that such insanity was caused by intoxication, the court shall charge the jury in accordance with the provisions of this section." Id. at (c). Thus, appellant had to present some evidence that, because of intoxication, he did not know his conduct was wrong.

Appellant relies on his testimony that before the shooting, he had consumed "six or seven" beers; that he did not remember some things about the shooting; and that, when he was arrested about two and a half hours later, an officer considered him to be intoxicated.

Appellant remembered that Rodriguez had told him her lover was named Manuel, that Manuel kissed the child and her better than he did, and that appellant was worthless. He remembered going to the van and getting the gun, but did not remember how many times he shot Rodriguez. He remembered that "approximately a minute—or less" elapsed from when she told him about Manuel and he shot her. Appellant remembered he was emotional and angry, but he was not aware of what he was doing. Despite this claim, appellant admitted that if Rodriguez had not taunted him, he would not have killed her. He stated he shot her based on his emotional reaction to her statement. He testified she was sitting in the driver's seat of the car, behind the steering wheel, and he shot her from the other side, but he could not remember how many times, nor did he remember grabbing her and putting the gun to her head. He remembered he was carrying his child while he shot Rodriguez, and he remembered that "as soon as (he) did the shooting," he left, put the child in the car seat, waited for Ms. Ross to come to the car and make sure his son would not get out and be run over. He knew then that Ms. Ross was "a wonderful lady who cared for his child before." When he fled, he intended to call his family members, and he did. He was planning on surrendering to police, but he asked family members for money. He knew that he had already "committed something— that already violated the laws here in Texas." "What I wanted to do was turn myself in to pay for the thing I had done." The above testimony and more came out on direct examination.

When cross-examined, appellant testified he could not remember certain incriminating things. He did remember, however, "When she told me that, I went and I got the gun and after I started shooting, I don't remember anything." When asked if he had ever told Valente or Mary Reyna

that he was sorry for killing Rodriguez, he stated, "No. I don't like to talk about it," because "I don't want to remember it." Appellant did not remember pulling his wife's head up to the point of the gun or her honking the car horn and hollering for help. He did not remember her begging for her life, and, when asked how it felt to shoot her ten times, he testified he did not know until he got "over here when they told me that here that's what I had done." When specifically asked by the State, "Are you trying to say that you were so drunk you didn't know what you were doing?," Appellant stated, "No, I wasn't very drunk. I had six or seven beers."

We hold that the evidence does not raise the issue of temporary insanity caused by intoxication. First, no lay or expert witness testified appellant was insane. On the contrary, appellant testified he was not insane, *i.e.,* he knew his conduct was wrong. *See* TEX. PENAL CODE ANN. § 8.01(a) (definition of insanity). Second, appellant's memory loss was never shown to be due to intoxication. He specifically denied that he was so drunk he did not know what he was doing. Third, appellant remembered much more than he forgot, including firing the first shot and many details immediately proceeding and following the shooting. Fourth, loss of memory is not insanity. Even if appellant could not remember or, as he stated, did not want to remember some incriminating facts four months later at trial, that is no evidence that at the time of the murder, he did not know his conduct was wrong.

The shooting occurred about 1:30 p.m., and appellant was arrested about 3:45 p.m. During that time period, he sought help from three people. He told Mr. Trevino, "I am screwed now. I have killed her," and spoke of fleeing to Mexico. He told Mr. Reyna, "Something has happened. I shot her." He tried to borrow money from both Mr. and Mrs. Reyna. None of these witnesses testified that he appeared intoxicated. No evidence showed how much appellant drank after the shooting but before his arrest, and none showed how many hours before the shooting he drank the beer. No evidence showed that six or seven beers consumed over an unstated period would cause either a normal person or appellant in particular to be temporarily insane or even to forget so memorable an event.

▉ It is well settled that lack of memory is not the same thing as intoxication; thus, evidence showing loss of memory is not sufficient to require an instruction on temporary insanity. *See Hart v. State,* 537 S.W.2d 21, 23–24 (Tex.Crim.App.1976); *Seek v. State,* 646 S.W.2d 557, 561 (Tex. App.—Houston [1st Dist.] 1982, no pet.); *Madden v. State,* 628 S.W.2d 161, 162–63 (Tex.App.—Eastland 1982, pet. ref'd).

Appellant relies on *Frias v. State,* 775 S.W.2d 871 (Tex.App.—Fort Worth 1989, no pet). We do not find that case persuasive on these facts. The *Frias* court affirmed a judgment and held that it was harmless error to deny a jury instruction on temporary insanity. Thus, its discussion of whether error occurred was unnecessary to the decision. More importantly, the evidence in *Frias* was both different from and stronger than here, and *Frias* reaffirmed that mere memory loss will not justify a charge on temporary insanity. *Id.* at 873. Frias did not claim memory loss, and the Fort Worth Court strove to distinguish the case from those holding that memory loss does not justify giving the temporary insanity instruction. *Id.*

Mr. Frias testified he was drunk on cocaine and alcohol during his assault and the cocaine "made things seem unreal, that he did not know what he was doing, and that he did not realize what was happening." *Id.* at 872. The court held:

> Although he did not specifically testify that he did not know that what he was doing was wrong, if he were so intoxicated that the situation seemed unreal, and if he were so intoxicated that he did not know what he was doing or realize what was happening, it follows that he was so

intoxicated as to not know that his conduct was wrong because he could not have known that his conduct was wrong if he did not know what his conduct was. *Id.* at 873. Frias's testimony is the opposite of appellant's, who specifically denied that he was so drunk he did not know what he was doing. We hold that appellant's testimony was insufficient to raise the issue of temporary insanity.

We overrule point of error one.

 In point of error two, appellant contends the trial judge should have granted a mistrial at the punishment stage because the prosecutor improperly questioned him about his post-arrest silence.

When the prosecutor attempted to impeach appellant's claim of remorse, the following occurred:

Did you ever tell any police officer that you talked to that you were sorry that you killed your wife?

DEFENSE COUNSEL: Objection.

THE COURT: Sustained.

DEFENSE COUNSEL: I'd ask the Court to instruct the jury to disregard that question.

THE COURT: Disregard the question. Do not consider it for any purpose whatsoever in the trial.

DEFENSE COUNSEL: Move for mistrial, your honor.

THE COURT: Denied.

The issue before us is whether this one, unanswered question was error so harmful that it could not be cured by an instruction to disregard. *See Ransom v. State,* 920 S.W.2d 288, 303 (Tex.Crim.App.1996) (op. on rehearing).

We hold, under these particular facts, that there was neither error nor harm. Appellant was not being questioned about his post-arrest silence. Rather, he was being questioned about his post-arrest statements. Appellant spontaneously told Officer Chapa, without being questioned, that he resented Rodriguez's infidelity. Chapa's testimony about that preceded appellant's testimony at the punishment stage, when appellant claimed he was sorry for his act. The State was entitled to question appellant about any potential conflict in his statements. We hold that the question was proper; thus, appellant got more relief than he deserved. *See Montoya v. State,* 744 S.W.2d 15, 27, 28 (Tex. Crim.App.1987); *Ewing v. State,* 971 S.W.2d 204, 208 (Tex.App.—1998, pet. ref'd); *Mendoza v. State,* 840 S.W.2d 697, 700 (Tex.App.—Corpus Christi, 1992, no pet.) (all holding that a defendant who has not remained silent under arrest may be questioned concerning conflicting accounts). Finally, had error occurred, an instruction to disregard has been held sufficient to cure harm of this magnitude. *Dinkins v. State,* 894 S.W.2d 330, 356 (Tex. Crim.App.1995); *Montoya,* 744 S.W.2d at 28.

We overrule point of error two.

We affirm the judgment.